Good morning. Good morning, Your Honors. May it please the Court. And you're Mr. Block, right? Yes, Your Honor. Aaron Block on behalf of the Online Merchants Guild. Very well. And you want to reserve any time? If I could. Okay. We'll do what we can here. Thank you very much. Your Honors, one of California's many taxing agencies has warned hundreds of thousands of Americans who live outside California that if they do not sign up for a permit with the agency, they can go to prison for as long as three years and be fined thousands of dollars. We have serious constitutional concerns with the lawfulness of those demands. For purposes of this appeal, the plausibility of the merits is not in dispute. We have to take as a given that these are real concerns. It's also not in dispute that we cannot challenge those registration demands in California State Court, not prospectively, not retrospectively, not ever. Wait a minute. That's unusual because the Supreme Court has already indicated that the very kind of thing that you're talking about here provides a plain, speedy, and efficient remedy. How do you get around that? How do we get around Grace Brethren? We were actually debating whether Grace Brethren was argued in this courtroom 40 years ago. So there are four reasons, Your Honor, four cases or three cases in one circumstance why I think Grace Brethren doesn't answer this question. And the first is the Supreme Court's unanimous decision in direct marketing association against Broll from 2015. Can you speak up a little bit? I'm not sure I'm going to hear you. In 2015, the unanimous Supreme Court held that Grace Brethren, because the plaintiffs didn't argue it this way, does not address how you handle registration or other information-gathering demands as opposed to pure acts of tax collection. That's the premise of direct marketing association, and that's spelled out most clearly in footnote 1 of the opinion for the Court. But it's really the – it's the first step on the whole analysis. You cannot have Grace – excuse me. You cannot have direct marketing association at what it means for the Tax Injunction Act if you don't first say, on the one hand, we have acts of taxation, collection, levy, or assessment. On the other, we have acts of registration or information-gathering that precede tax. But you have a problem of whether this on the Supreme Court to some degree stops the assessment. At least as I look at it, the information that they're asking for is a, if you will, the sine qua non of their being able to even possibly collect the tax. So even though you're kind of dancing around it a little bit, if they can't collect the information, they can't collect the tax. And doesn't that mean that it to some degree stops what they're trying to do? So, Your Honor, it's a great question. I have a legal and a factual response. Okay. The legal response is that in direct marketing association, the court took up that issue and said that we recognize that stopping these kinds of information-gathering demands might impair or impede subsequent acts of tax collection. And that does not matter doctrinally because the injunction is not acting directly on the act of taxation. And then last year, in a unanimous opinion by Justice Kagan in CIC Services, the court once again said the same thing. Justice Kagan quoted at length from direct marketing association and says we recognize that information that precedes taxation can, of course, facilitate taxation, but that is doctrinally inapposite. What matters is whether the injunction itself will literally stop a pure act of tax collection, levier assessment or not. And then factually, Your Honor, this is an interesting case because unlike in, you know, direct marketing association and CIC Services, California could go get the information they need to assess the taxes against other parties. Remember, these were transactions that occurred on Amazon. Amazon has the record of those transactions, and the state could get that information from Amazon, as other states have done. Additionally, California can, either using that information or perhaps other means, ask taxpayers. That's probably the most administratively difficult, but that is a possibility. So even stopping these information-gathering demands doesn't necessarily preclude the state from gathering this information and pursuing at least two other sources of tax revenue. And that sort of bleeds into the merits. We feel that of the three potential players here, we are the politically weakest because we're all out-of-state residents, and so we don't have the financial or voting power that Amazon and consumers do. And turning back, if I could, Your Honor, to Grace Brethren, because I agree with you. I've wrestled with Grace Brethren more than any other decision here in terms of what that means for whether this case can go forward, pass the motion to dismiss so that we can do discovery and try and calibrate an injunction that works for everybody. And when I look at CIC Services, one of the main themes, the second half of the opinion in CIC Services, is the importance of pre-enforcement review when criminal penalties are on the table. If you look at the – if the court looks at the Grace Brethren opinion, at least as it was litigated before the Supreme Court, we don't have a concern that people are going to go to prison for three years if they don't sign up for a permit. In CIC Services, we're dealing only with a misdemeanor. And Justice Kagan says that the normal person does not risk going to jail in order to exercise their constitutional rights. And so they have to be given an opportunity for pre-enforcement review. And if we step outside taxes, we all know that's the case. We do not demand every circuit, every Supreme Court decision – and I could look at Susan B. Anthony's list. I could look at other decisions by the Supreme Court or this Court. We don't ask people to expose themselves to serious criminal penalties, like three years in jail, before they try to vindicate their constitutional rights. We let those challenges go forward. And if they – with very narrow exceptions, we let those challenges go forward. And if it turns out that the State or local government is, in fact, violating constitutional rights, by golly, we want to find that out on the front end, not on the back end. Well, Counsel, one of the questions is, do you have a state law remedy? And why isn't a refund action, after you've paid that, an adequate remedy? Actually, it's another good question, Your Honor, that ties into the third case I wanted to raise, which is Levin. Levin being the dominant comedy decision right now. And Levin looks very specifically at the remedy for the injury that is alleged. In Levin, the injury that was alleged was an unfair allocation of tax benefits. And the Supreme Court said, of course the Ohio courts can either level up or level down, and they can fix that specific injury. Here, California has walled itself off from all remedies, all challenges, other than for a refund. And so if our members, excuse me, have to register, that's a different – that's a distinct injury that can never be remedied. We have to just go ahead and register with every consequence that means, not just for taxation. Now we're in the system. And agencies talk, and so agencies can share information. And I know from dealing with people, because these are mom-and-pop businesses, they get a threatening email like this, and they think, now I have to consult my accountant, my lawyer. You know, it may not be a desirable remedy, but why isn't there a remedy? Because, Your Honor, it addresses a different injury. And it's just like we can look at direct – well, I think CIC services is probably a better parallel here, but I don't think that in the context of these information-gathering demands, especially in the era we're in now, post-direct marketing association, where the Supreme Court has been very careful about policing these lines so that we don't – Can you talk more, though, about direct marketing association? Yes. I mean, Justice Ginsburg, in her concurrence, says it doesn't apply to you. You're the taxpayer. Direct marketing wasn't – these are third parties collecting information. They weren't the taxpayer. And she's very specific that that's a very different question. And I recognize, and with all due respect to the late Justice Ginsburg, that was a concurrence and not the Court's opinion. The majority – it's not even a majority. But you would agree you're in a different position than the plaintiffs in direct marketing. You are the folks paying the tax. We are one potential taxpayer, absolutely. But the other thing here that we see – The regulation makes you the taxpayer? I'm sorry? I mean, the regulation makes you the taxpayer in these pre-2019 – That's a big debate, Your Honor. That's a big debate. And we haven't – you know, we haven't briefed this. But there's actually a regulation specific to consignment sales under which the consignment store, i.e., Amazon, would be liable for taxes, not us, which makes sense because you ask the merchant, the person who has the cash register, to collect the money. But that's a merits issue. We haven't had an opportunity to debate in front of this Court. So the other – the other distinctions, actually, in direct marketing association actually make our case stronger. One is the availability of the State to gather this information, the State of California to gather this information the other way. Two is the absence of criminal penalties. We don't know what Justice Ginsburg's concurrence would have said about that. We do know what the Court unanimously said in CIC services. Criminal penalties change the calculus because we don't ask people to expose themselves to jail time if they object to regulatory authority over their business. They get to go to some court in the first instance. California is very unusual. I cannot tell the Court California is the only State. I can tell the Court, having looked at this, at least the other large States are – no one's permissive about preenforcement review other than perhaps Pennsylvania, which I'll come to. But the other States do not set this – this bright line, as I'm aware of, where you can only register, wait for an assessment, pay the assessment, seek a refund, and hope you get your money back, and that doesn't cure all your injuries. I don't want to say you don't have much time left. I know. But did you want to just use the rest of it up? What's your pleasure? Yes, I'll – it's 15 seconds. I would just point to our example in Pennsylvania. Pennsylvania opens its courthouse doors. We litigated these issues on the merits and got an en banc decision in our favor that California, because California made a design choice to deprive us of that means of vindicating our rights, we can only vindicate our rights in this court. Otherwise, we are left with the untenable situation where registration demands that carry serious prison time go without any kind of preenforcement review and redress. And that is respectfully anathema to our system, even when taxes are involved. But interestingly enough, you are here before us arguing that very point. And I don't think you're in jail yet, are you? No. Hopefully not. As far – but the State likewise has not disavowed these threats. And we're talking about real people. I can make my own judgment about that. But for real people here, the State's going to put me in jail for two or three years. That's pretty terrifying to people. I understand. My only point is that it's not like you have a mom-and-pop shop and nobody's looking out for them. You're here arguing the case. Try to protect them. Yes. You're before a court of law. Yes. We'll be able to deal with the issue. So it's not like, you know, schtum and drum. Well, I'm trying to get in the courthouse door. It's – you know, I filed the case in late 2020, and I'm just trying to get past the starting gate here. And thank you. I get it. All right. Very well. All right. Let's hear from the State. Thank you. I'm Deputy Attorney General Michael Sopoznikoff, representing Nicholas Madouras, the Director of the California – Talk up a little bit. Sure. Michael Sopoznikoff, Deputy Attorney General for Nicholas Madouras, the Director of the California Department of Tax and Fee Administration. So may it please the Court. The relief that the Guild is asking for here is exactly the relief the Tax Injunction Act and Principle of Comedy prohibit. Their legal theory is that California has identified the wrong parties as liable for sales and use tax on the sales that issue the FBA sales before October of 2019. If this Court reverses and remands, then the Guild will ask the District Court for an order barring California from pursuing tax collection on the FBA merchants. And you can see this in their reply where the Guild argues they don't seek to stop the assessment or collection of taxes because California could pursue those taxes from Amazon or it could pursue them from the California residents. The obvious implication is if they win, we won't be able to pursue them from the FBA merchants anymore. A federal court injunction that tells a state who it can and can't collect taxes from is an injunction that suspends or restrains the collection of state tax under the Tax Injunction Act, and it's exactly the kind of intrusion into state tax administration that comedy prohibits. The Guild's focus on registration doesn't help them. California law requires retailers to register before they submit tax returns and before they pay the tax. And the Guild has acknowledged that voluntary compliance, submitting tax returns, paying your taxes, those are acts of assessment and collection. So a federal court order that says to a class of retailers, you don't have to register, is akin to an order telling them you don't have to file tax returns or pay the tax. Just to be sure I understand correctly, that is the way in which the state collects sales taxes through people who have registered as sellers, basically. Is that correct? It's by far the most common way. Most sellers voluntarily comply. So without registration, the state is, in effect, out of luck. And from your perspective, the federal government's not telling the state how it's to collect the sales tax. Is that correct? In other words, it can seek different ways to collect it. I think I'm not understanding the question. In other words, the federal government's not saying you have to go directly to the taxpayers. You can go indirectly, in this case to the Guild, to get the same information in effect through, in this case, Amazon. Is that correct? I think one of the confusions here is whether the state is trying to collect any information at all. And you can see from the correspondence attached to the complaint, this is not an information-gathering exercise. The correspondence attached to the complaint makes it clear. Those letters say, effectively, you are a retailer who owes state sales tax because you made sales through Amazon and you had inventory in California. As a retailer who owes state sales and use tax, you need to register, file tax returns, and pay your tax. That's what the correspondence says. So the arguments that this is information-gathering are entirely beside the point. We're not trying to gather information. We're telling them to pay taxes that the state has already determined that they owe. So how do you respond to the argument that the fact that criminal penalties are involved changes the calculus? I would make two points. First off, if you follow the statutes that are identified in the correspondence, the felony is tax evasion, and the misdemeanor is essentially for operating an unlicensed store in California. But I think more to the point and to distinguish CIC services, in CIC, the federal government's position, IRS position, was the right way to court is for them to violate the law, ignore the reporting requirement, hope that IRS assesses a penalty but does not go for criminal sanctions, and then you may come to court. That's completely different from our position here. Our position is you should comply with state sales tax laws, pay the taxes, and that opens the door to court. There's no risk of criminal penalties because the way to get into the California Superior Court is to pay the tax and file a claim for refund. So if they just do that, there's no risk of any criminal penalties. So your view is that counsel's concern about criminal penalties is bogus in effect? I think it's an attempt to try to get into federal court. It's an attempt to shoehorn this case that doesn't fit CIC into some of the language of CIC. But the situation here is very different. I think one more point is that the guild's complaint asks the district court to determine who's the proper retailer who owes the state sales and use tax in FBA sales before October of 2019. Should the state have assessed against Amazon or should the state have assessed against the individual FBA merchants? That's a pure issue. That's a pure question of state tax law. And it's exactly the kind of question that when you look at Levin, the Supreme Court has counseled federal courts shouldn't be getting into. There are policy implications potentially. If we get into the situation where the determination is both fit under the statutory definition of retailer, both Amazon and the FBA merchant, and the tax agency has to make a determination who to collect from so that they're not collecting taxes twice, that's potentially a policy call. It's the kind of call a federal court should not be making for a state. And the FBA retailers absolutely have the right to bring that question of law into state court. They have the same opportunity as an in-state California retailer would to pay the tax, file a claim for refund. All of their constitutional arguments, all of their statutory arguments, including the Internet Tax Freedom Act arguments, can be heard in state court, personal jurisdiction, nexus. The court is available for them. If one retailer pays the tax, files a claim for refund, they can bring this to state court. And I gather your point is that there is no risk of criminal penalty if they don't follow that approach? That's correct. A retailer who receives one of these letters says, I don't think I owe this tax, but I'm going to pay it, file a claim for refund, and come to court has no risk of criminal penalties. What if they don't pay the tax? Then they're like anyone else who doesn't pay a tax that they owe. You know, there may be penalties for that, but it's because they didn't pay a tax they owe. And then ultimately if they protest that and it turns out they didn't owe the tax, then the law will deal with that the way it does with anyone who faced a potential penalty and it turned out they didn't owe the tax. They're not special in that regard. Are there any other questions? Any other questions? I don't know. I think not. Okay. Very well. Now, Mr. Block, you used up your time, but let me ask my colleagues here whether either of you have additional questions that you'd like to pose to Mr. Block in light of the fact that we've heard from the State. I would like you to address this idea that, you know, your concern seems to be who should be paying the tax. And you will hear from the State saying that that really does fall under kind of a State policy concern that the Federal court shouldn't be involved in. Where I would disagree with that, Your Honor, is that there are constitutional and statutory restraints on which parties can be made to pay a tax. And so these kind of go to the merits issues, which we both sides, I think, made a choice not to raise here. But the gist of the argument is that States can't discriminate against outsiders when they assess taxes. They can't impose unduly burdensome taxes. And then under the Internet Tax Freedom Act, States have to treat online merchants the same way they treat brick and mortar merchants. In the brick and mortar example, the store collects the tax. And here, for a period of seven years, the State looked the other way while the store wasn't collecting the tax and then decided after the fact retroactively to make the supplier pay the tax. And those are the merits arguments. But that's why I think it's not strictly an issue of State discretion cabined by Federal constitutional and statutory law. And if I could have forgiveness to just make one sort of citation to the record with respect to this issue of whether people are at risk of going to prison, I take with respect what counsel is saying, but I'm looking at an email which is in the excerpts of record at 70 and 71. And this email that a CDTFA agent sent to a merchant says, if you don't register, you are at risk of being guilty of a felony and being in prison for 16 months, two years, or three years, or both the fine and imprisonment. And it may be the case that lawyers could parse these things, but the message that is coming out of the agency in plain English to real people is, if you don't sign up for the permit, you can go to prison. And almost never do we make people risk imprisonment to vindicate their constitutional rights. Okay. I think I take your point. I was not familiar with that particular citation. But I gather what your opponent has said about that is they're like any other taxpayer. If you don't pay the tax, you risk the problem of nonpayment. But if you pay the tax, then you can basically litigate all of your constitutional claims, everything you can possibly imagine, no risk of prison at that. But I'm glad you brought that other point up. Yes. And I think where we're talking past each other, counsel and I, are these are distinct steps. There's registration, and we are targeting registration separately. And the Supreme Court has been emphatic that these are separate steps, and you have to consider them separately for jurisdictional purposes. Separately, if we get around to being assessed a tax and paying it, we can seek a refund like other people. But that skips over the step of whether registration demands on payment of imprisonment are lawful. Thank you, Your Honor. Thank you very much. Thanks for both counsel's argument. We appreciate it. The case just argued is submitted.
judges: THOMAS, SMITH, McShane